IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–02153–KMT

ANNA E. KROON,

      Plaintiff,

v.

CAROLYN COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

---

## ORDER

---

The matter before the court is Claimant Anna E. Kroon's appeal of the Commissioner of

Social Security's denial of her application for Disability Insurance Benefits ("DIB"),

Supplemental Security Income ("SSI"), and Child's Insurance Benefits ("CIB") pursuant to

Titles II and XVI of the Social Security Act ("the Act").  Jurisdiction is proper under 42 U.S.C.

§ 405(g).

### FACTUAL AND PROCEDURAL BACKGROUND

Claimant applied for DIB, SSI, and CIB in May 2011, alleging that she had been disabled

by anxiety and an array of pain-inducing impairments, including fibromyalgia, since May 15,

2010.  (*See* Doc. No. 10, Social Security Administrative Record [AR] at 47, 220, 222, 228, 253,

267 ["What keeps me from working now is a combination of things that are all related to

pain."].)  The Commissioner denied her applications.  (*Id.* at 93.)  Following the denial, Claimant

requested and received a hearing by an Administrative Law Judge ("ALJ").  (*Id.* at 39–77, 104,

106, 108, 110.)  After the hearing, the ALJ determined that Claimant was not disabled within the

meaning of the Act, because Claimant was still capable of performing substantial gainful work in

the national economy.  (*Id.* at 23, 31, 34.)  The Appeals Council subsequently denied Claimant's

request for review (*id.* at 1), making the ALJ's decision the final decision of the Commissioner

for purposes of judicial review.  *See* 20 C.F.R. §§ 404.981, 422.210(a).  Claimant timely sought

review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

The Social Security Commissioner has established a five step, sequential process for

determining whether a claimant is disabled under Titles II and XVI of the Act:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial
    gainful activity.  A claimant who works is not disabled, regardless of the
    medical findings.

2.  The ALJ must then determine whether the claimed impairment is "severe."  A
    "severe" impairment significantly limits the claimant's physical or mental
    ability to do basic work activities.

3.  The ALJ must then determine if the impairment meets or "equals" in severity
    certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, then
    the ALJ must determine whether the claimant can still perform any past work
    despite his or her limitations.

5.  If the claimant no longer retains the ability to perform past work, then the ALJ
    must decide whether the claimant can perform any other gainful and
    substantial work in the economy despite the claimant's limitations.

*See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988); 20 C.F.R. § 404.1520(a)(4)(i)–

(v).  The claimant has the initial burden of establishing a disability in the first four steps of this

analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  After that, the burden shifts to the

Commissioner to prove that, despite the claimant's impairments, he or she is still capable of

performing substantial gainful work in the national economy. *Id.* If at any point the

Commissioner conclusively finds that the claimant is or is not disabled during the five-step

review process, the analysis ends. *See Casias v. Secretary of Health & Human Servs.*,

933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by the Court is limited to determining

whether the ALJ applied the correct legal standard, whether the decision is supported by

substantial evidence, and whether the decision comports with the relevant regulations and case

law. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992);

*Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536

(10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent

and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d

1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient

basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal.

*Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d

1284 (11th Cir. 1983)).

Substantial evidence is evidence a reasonable mind would accept as adequate to support a

conclusion. *Brown*, 912 F.2d at 1196. A finding is supported by substantial evidence if it is

supported by "more than a scintilla, but less than a preponderance" of evidence. *Gossett v.

Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521

(10th Cir. 1987)). Evidence is insubstantial when it is "overwhelmed by other evidence in the

record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992).  The Court may not "reweigh the evidence" or "substitute its judgment" for that of the

Commissioner."  *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987).  So long as there

is substantial evidence to support the ALJ's decision, the decision must stand, even if the Court

would have reached a different result.  *See Ellison*, 929 F.2d at 536.

## ANALYSIS

Claimant alleges the ALJ erred in five ways: (1) that the ALJ failed at steps two and three

of the disability review process to analyze the severity of several of Claimant's alleged medical

impairments; (2) that the ALJ's conclusions at steps two and three, that Claimant's psychological

impairments were not severe and did not meet an Appendix 1 listing, were not adequately

justified and are not supported by substantial evidence; (3) that the ALJ erred by assigning

substantial weight to a single decision maker and failed to discuss, evaluate, and weigh certain

evidence; (4) that the ALJ failed to consider numerous factors and evidence when assessing

credibility of Claimant and her friend, Mr. Ransom Routledge; and (5) that the vocational

expert's testimony cannot serve as substantial evidence at step five because the ALJ's

hypothetical to the vocational expert was incomplete due the ALJ's errors at steps two, three, and

four.  (Doc. No. 17 [Opening Br.] at 11–19, filed Apr. 17, 2015.)

### 1.  The ALJ's Alleged Failure to Analyze the Severity of Several of Claimant's Medical Impairments

Claimant argues that although she alleged disability due to spine and hip injuries,

fibromyalgia, carpal tunnel syndrome, and anxiety, the ALJ failed at steps two and three to

discuss and evaluate her other impairments.  (Opening Br. at 15–16.)  The part of the ALJ's

written decision containing her step-two analysis, determining whether Claimant's impairments

are "severe," begins with the header, "The claimant has the following severe impairment:

chronic back strain with minimal degenerative changes  . . . ." (AR at 25.)  The ALJ then

recounts, at length, Claimant's alleged mental impairments, including her alleged anxiety and

"depressive type symptoms." (*Id.* at 26.)  The ALJ does not, however, recount or analyze any

other impairments at step two. (*See id.*)  The part of the ALJ's written decision containing her

step-three analysis, determining whether any of Claimant's "severe" medically determinable

impairments meet or equal an Appendix 1 listing, analyzes the equivalency of Claimant's "back

condition" only. (*See id.* at 26–27.)  There, the ALJ explains why she found that Claimant's

back condition did not meet or equal an Appendix 1 listing without discussing or mentioning any

of Claimant's other alleged conditions. (*See id.* at 27.)

The ALJ does, however, discuss Claimant's other conditions as part of the ALJ's step-

four Residual Functional Capacity ("RFC") analysis. (*Id.* at 27–31.)  In that section of the

decision, the ALJ notes Claimant's alleged "chronic pain in the low back and hips, along with

fibromyalgia flare-ups that primarily affect her wrists and hands," as well as "hip pops" that

generate severe pain. (*Id.* at 28.)  When weighing the persuasiveness of Claimant's subjective

testimony about the intensity, persistence, and limiting effects of her pain, the ALJ discusses

many of Claimant's alleged pain-producing impairments, including her back impairments, leg-

length discrepancy, and fibromyalgia. (*Id.* at 29.)  The ALJ also explains why she found that

"the record as a whole does not establish a disabling impairment of such a severity, either singly

or in combination, that would preclude the performance of all sustained work activity." (*Id.* at

30.)  The ALJ states that the medical evidence shows that Claimant's back and hip pain was

treated with mostly chiropractic care, that repeated exams showed minimal musculoskeletal

problems, that Claimant's leg-length discrepancy was successfully treated with an orthotic, that

an "EMG/nerve conduction study of the lower extremities" showed minimal abnormalities with no neuropathy, that diagnostic imaging shows minimal to mild problems, and that x-rays show a normal cervical and lumbar spine and a normal right hip.  (*Id.*)

While the ALJ failed to discuss or evaluate the severity of several impairments at steps two and three of her analysis, the ALJ considered and discussed those impairments during her step-four RFC analysis.  Of the several items listed in Claimant's disability application, Claimant acknowledges that the ALJ considered Claimant's back impairments, mental impairments, and fibromyalgia.  (*See id.*)  The ALJ also clearly considered Claimant's hip pain, leg-length discrepancy, and overall chronic pain.  The only remaining impairment for the ALJ to consider was carpal tunnel syndrome.  (*See* AR at 267 [listing disabling impairments].)

Though the ALJ does not mention carpal tunnel syndrome by name, the ALJ found that an "EMG/nerve conduction [sic] study of the lower extremities" showed minimal abnormalities with no neuropathy.  (*Id.* at 30.)  That study was suggested by the same doctor Claimant cites as having "diagnosed carpal tunnel syndrome," Dr. Sikoutris.[1]  (*See id.* Opening Br. at 16 [citing AR at 337].)  Dr. Sikoutris—a podiatrist—did not, however, diagnose carpal tunnel syndrome as Claimant alleges, which is a condition that involves nerves and tendons at the base of the hand, not the foot.[2]  (AR at 337.)  Claimant misinterprets a positive "Tinel's sign" detected by Dr. Sikoutris as evidence of Claimant's *carpal* tunnel syndrome (*see* Opening Br. at 16, n.1), even

---

[1] The test was performed by another doctor.  (*See* AR at 337 ["Faxed to Tricare SE 3-16-11 & Dr. Ryan"]; *id.* at 388–390 [showing results of "Motor Nerve Conduction Examination" conducted by a Dr. Ryan].)

[2] *Carpal Tunnel Syndrome*, MEDLINE PLUS, https://www.nlm.nih.gov/medlineplus/carpaltunnelsyndrome.html (last visited Nov. 24, 2015) ("The carpal tunnel is a narrow passageway of ligament and bones at the base of your hand.  It contains nerve and tendon.  Sometimes, thickening from irritated tendons or other swelling narrows the tunnel and causes the nerve to be compressed.").

though, as Defendant points out, the same test can be used to detect *tarsal* tunnel syndrome, a condition associated with the foot and toes (Doc. No. 18 at n. 11 [Resp. Br.], filed May 18, 2015).  Dr. Sikoutris's notes make it clear that the positive Tinel's test was for possible *tarsal* tunnel, not *carpal* tunnel.  According to those notes, Dr. Sikoutris suggested an EMG/NCV[3] test "due to the patient having a Tinel's sign" in order to "rule out any underlying radiculopathy or tarsal tunnel."  (AR at 337.)  And when that test was performed, the test was done on Claimant's lower extremities, not her upper extremities.  (*Id.* at 388.)  Thus, when the ALJ stated that an "EMG/nerve conduction study of the lower extremities" showed minimal abnormalities with no neuropathy, the ALJ was discussing and dismissing the possibility of tarsal tunnel syndrome.  There is no other evidence in the record that could be construed as Claimant having carpal tunnel syndrome.  (*E.g.*, *id.* at 648, Dr. Ferlic's Consultative Medical Evaluation, dated January 22, 2013 ["She also alleges CTS.  No + exams are seen, although tarsal tunnel syndrome was considered at one time."].)  Nor did Claimant mention carpal tunnel syndrome when the ALJ asked about her pain-producing ailments at her administrative hearing.  (*See id.* at 53 [discussing only her fibromyalgia when asked about her other impairments].)  The only time Claimant mentioned pain in her wrists and hands, she blamed the pain on fibromyalgia, not carpal tunnel syndrome.  (*Id.* at 47.)  The court will not fault the ALJ for not discussing a condition Claimant alleges based solely on her misreading of a false-positive Tinel's test of the wrong extremity.  Ultimately, "common sense, not technical perfection," is the court's guide.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

---

[3] An "NCV" test is a "Nerve conduction velocity" test that is used to "diagnose nerve damage or destruction.  *Nerve Conduction Velocity*, MEDLINE PLUS, https://www.nlm.nih.gov/medlineplus/ency/article/003927.htm (last visited Nov. 23, 2015).  It is often followed by an electromyography ("EMG") test.  *Id.*

The ALJ considered each of the claimant's medically determinable impairments as part of her overall disability decision.  To the extent that the ALJ failed to discuss these considerations in the proper section of her written decision, the ALJ committed harmless error. The court therefore rejects Claimant's argument that the ALJ failed to analyze the severity of several of Claimant's medical impairments.

### 2. The ALJ's Conclusion that Claimant's Psychological Impairments were not Severe

In the step-two section of her written decision, the ALJ examined the severity of Claimant's psychological impairments.  (AR at 25–26.)  The ALJ first recited Claimant's testimony:

> At the hearing, the claimant testified she becomes anxious when experiencing severe pain and starts to lose focus and feel panicked.  She further indicated that anxiety alone would prevent her from working; and that she has a difficult time making friends and interacting with others.  The claimant testified she has sought mental health therapy in the past, but does not have insurance to do so now.

(*Id.* at 26.)  Next, the ALJ recounted the testimony of Claimant's friend and witness, Mr. Routledge, who, in the words of the ALJ, stated that Claimant "cannot handle stimulated environments and 'shuts down.'"  (*Id.*)  The ALJ then noted that Claimant had taken an anti-depressant (Wellbutrin), displayed "appropriate" mood and affect in examinations, and had normal judgment.  (*Id.*)  The ALJ also stated that Claimant's depression was "stable" as of April 2011, that, despite her testimony, Claimant "does not appear" to be involved in any mental health treatment, and that Claimant had not been recommended for psychological evaluation by her

treating physician.  (*Id.*)  After noting that the state agency physician found Claimant's mental impairment "not severe," the ALJ made her "paragraph B" findings:[4]

> After a thorough review of the entire evidence, [I] find[] the claimant has no restriction in activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence, and pace, and has not experienced any extended periods of decompensation.

(*Id.*)  The ALJ then concluded that "the claimant's mental impairment has no more than a minimal effect on the claimant's ability to perform basic work-related activities and is considered a 'non-severe' impairment."  (*Id.*)

Claimant challenges the ALJ's conclusion that Claimant's psychological impairments are not severe.  (Opening Br. at 14–15.)  Claimant argues that the record indicates that her psychological impairments are severe, citing her Wellbutrin prescription for depression, her "mild distress" during an examination, statements in her chiropractor's notes indicating Claimant's state of mind about her father, and Mr. Routledge's testimony about Claimant "shut[ting] down" in stressful situations.  (*Id.*)  Claimant argues that remand is necessary for the scheduling of a psychological consultative examination and further development of the record because the ALJ's conclusion is not supported sufficient evidence or "even minimal rationale."  (*Id.* at 14.)

Though the court agrees with Claimant that the ALJ erred by failing to adequately explain the rationale behind each of her "paragraph B" conclusions, the error is harmless because the ALJ's overall conclusion that Claimant's mental impairments are not severe is nevertheless

---

[4] "Paragraph B" findings are findings from Paragraph B of section 12.00 of Appendix 1.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00 ¶ B.  Paragraph B findings are made during steps two and three of the disability review process, though they are primarily used at step three to determine whether a "severe" mental health condition meets or equals an Appendix 1 listing. *See* SSR 96-8P, 1996 WL 374184 at *4.

supported by substantial evidence.  Although the ALJ failed to explicitly connect her "paragraph B" findings with the evidence, the ALJ did cite the state agency physician's report, which, based upon a "review[] [of] the evidence," independently came to the same conclusion as the ALJ. (AR at 26.)  And what the ALJ's "paragraph B" findings lacked in explanation, the state agency physician's report provides.  The report noted three normal psychological exams, normal judgment, and a cooperative, appropriate mood and affect.  (*Id.* at 518.)  It reported that Claimant forgets to take her medications, does not spend time with family members because of her anxiety, and has "trouble with completing tasks, concentration and getting along with others due to pain making her lose focus."  (*Id.*)  The report cites Claimant's statement that she does not handle stress well, can pay attention for five to ten minutes, is "okay" with written but not spoken instructions, and has difficulty with changes in routine.  (*Id.*)  Finally, the report remarks that in "[Claimant's] ADLs, she reports most difficulties due to her pain," [5] notes that "there is limited [medical record evidence] to support her allegations regarding cognitive complaints," and concludes that "her mental condition is considered not severe."  (*Id.*)  In addition to citing the state agency physician's report, the ALJ acknowledged Claimant's Wellbutrin prescription for depression but noted that Claimant displayed appropriate mood, affect, and judgment, stated that her depression was stable as of April 2010, and that her own treating physician had not recommend further psychiatric or psychological evaluation.  (*Id.* at 26.)  This evidence is such that a "reasonable mind would accept as adequate to support [the] conclusion" that Claimant's mental impairments are not severe.  *See Brown*, 912 F.2d at 1196.

---

[5] The report never clarifies the meaning of "ADLs," though it appears to reference "Activities of Daily Living."  (*See* AR at 518.)

The allegedly contradictory evidence cited by Claimant is too anemic to rebut the ALJ's conclusion.  Claimant urges the court to consider Claimant's and Mr. Routledge's testimony, but the ALJ discounted part of Claimant's testimony and all of Mr. Routledge's testimony.  (*See* AR at 29–30.)  Claimant points to her prescription for Wellbutrin, but the ALJ clearly considered Claimant's prescription for Wellbutrin, and a prescription for an anti-depressant does not, by itself, necessitate a finding that the depression was severe.  Claimant also suggests that Claimant's prescription for Valium is evidence of her having a severe depression, but the Claimant's own medical records indicates that the Valium was prescribed for muscle relaxation, not anxiety or depression.  (*Id.* at 458.)  Claimant points to a notation in an emergency room record indicating that Claimant was in "mild distress" and was "anxious,"[6] but mere "anxiety" or "mild distress" does not rise to the level of "severe."  (*See* Opening Br. at 15 [citing AR at 494].)  Indeed, a nearly identical emergency services record, also indicating "anxiety" and "mild distress," shows that Claimant's emergency visit was prompted by nothing more than an itchy rash Claimant believed to be poison ivy.  (AR at 490–91.)  Finally, Claimant points to several comments in her chiropractor's records about Claimant being upset about her father.  (Opening Br. at 15.)  But a chiropractor is not an acceptable medical source, especially to opine on psychological factors.  20 C.F.R. § 404.15139(a); SSR 06-03P, 2006 WL 2329939 at *2.

Additionally, "in cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, 'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues

_____

[6] The record identified by Claimant does not indicate Claimant was anxious.  (*See id.* at 494 [describing Claimant as "alert, mild distress"].)

requiring further development.'"  *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004)

(quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)).  Plaintiff's argument that the

ALJ should have ordered a consultative examination is less availing in light of the fact that she

was represented by counsel who never indicated to the ALJ that any further development of the

record was necessary.

Based on the above reasoning, the Court finds the ALJ did not err by not ordering a

consultative examination.  Further, the ALJ's step two finding is supported by substantial

evidence.

### 3.   The ALJ's Alleged Assignment of Substantial Weight to the Opinion of a Single Decision Maker and Failure to Discuss, Evaluate, And Weigh Certain Evidence

Claimant argues that the ALJ: (a) erred by giving substantial weight to a single decision

maker ("SDM") and should have, instead, requested a treating source's opinion or a consultative

examination; (b) did not discuss the certain evidence showing changes to Claimant's spine;

(c) failed to weigh and evaluate an  "informal assessment" of Claimant's limitations by

Claimant's chiropractor, Dr. Ronald S. Hoyle.  (Opening Br. at 11–14.)

### a.   The Weight Assigned to the Single Decision Maker

The ALJ is required to consider every medical opinion the ALJ receives, whether those

opinions are from "acceptable medical sources" or from "other sources."  20 C.F.R.

§ 416.927(c); SSR 06-03P, 2006 WL 2329939 at *3.  Then, in the ALJ's written decision, the

ALJ must clearly state how much weight the ALJ ultimately assigned the opinion and why.  *See*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003).  Acceptable medical sources

include licensed physicians and psychologists, among others.  20 C.F.R. § 404.15139(a); SSR

06-03P, 2006 WL 2329939 at *2.

A Single Decisionmaker ("SDM") is an individual who makes the initial disability

determination and "determine[s] whether the other conditions for entitlement to benefits based

on disability are met." 20 C.F.R. § 404.906(a)(2). An SDM's opinion is not entitled to any

weight because an SDM is "not a medical professional of any stripe." *Velasquez v. Astrue*, No.

06-CV-02538-REB, 2008 WL 791950 at *3 (D. Colo. Mar. 20, 2008).

Before completing step four of the disability determination, the ALJ must determine the

claimant's RFC, which is the most the claimant can do in a work setting on a regular and

continuing basis despite the limitations imposed by her impairments. SSR 96-8p, 1996 WL

374184 at *1, 3. When determining the claimant's RFC, the ALJ must consider all the relevant

evidence and all of the claimant's medically determinable impairments. *Id.* at *2. Then, in the

written decision, the ALJ must explain how the evidence supports each of his or her conclusions.

*Id.* at *7. Although the ALJ must cite facts to support each conclusion in the ALJ's RFC

analysis, the ALJ is not required to discuss every bit of evidence. SSR 96-8p, 1996 WL 374184

at *7; *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

Here, as part of the ALJ's RFC assessment, the ALJ stated that she "considered the

statement made by the State agency [] medical consultant found at Exhibit 2A, which was

subsequently reviewed and affirmed by a physician at Exhibit 17F." (AR at 30.) The ALJ

continued, "This highly qualified physician and medical expert in Social Security disability

evaluation agreed the evidence supported [the] opinion" that Claimant was limited in certain

ways. (*Id.*) The ALJ found that the opinion was "consistent with the findings made in this

decision" and that it "is supported by the findings made by treating and examining sources." (*Id.*

at 31.) The ALJ then stated, "Though this medical consultant is considered a non-examining

expert source, their opinion is entitled to substantial weight, as it is consistent with and supported by the objective findings of record." (*Id.*)

Exhibit 2A is part of Exhibit A, which contains the "medical consultant" assessment the ALJ referenced as part of her RFC assessment. (*Id.* at 78–88.) On the signature page of that assessment, under the heading "Signatory's role," the "Single Decisionmaker (SDM)" box is checked, not the medical consultant box. (*Id.* at 84.) The name appearing in the signature block below the checkboxes is Natalie Kemna. (*Id.*) Exhibit 17F contains a half-page summary of Claimant's allegations, activities, conditions, and medical records, and concludes that "the records are reviewed and support the RFC as written by N. Kemna SDM 7/6/11." (*Id.* at 648.) At the bottom, the exhibit is signed by D. Ferlic, M.D. (*Id.*)

The ALJ erred when referring to the SDM as a medical consultant. The signature block clearly indicates that the individual signing the statement was an SDM, not a medical consultant. But this error is harmless because a medical doctor, D. Ferlic, M.D., indicated his review and acceptance of the SDM's assessment. The ALJ specifically indicated her reliance upon Dr. Ferlic, stating that the assessment was "subsequently reviewed and affirmed by a physician at Exhibit 17F." (*Id.* at 30.) By noting that a "highly qualified physician and medical expert in Social Security disability evaluation agreed the evidence supported [the] opinion . . . ," the ALJ was referring to Dr. Ferlic's statement that "the records are reviewed and support the RFC as written by N. Kemna SDM 7/6/11." (*See id.*) As a medical doctor, D. Ferlic's opinion is an acceptable medical source opinion, and the ALJ was entitled to afforded it "substantial weight" so long as she offered reasons for doing so. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f). The ALJ did just that when she stated that the opinion "is consistent with and supported by the objective

findings of record" and that it "is supported by the findings made by treating and examining

sources." (*Id.* at 31.)  Claimant does not contest the ALJ's reliance on the treating and

examining sources referenced by the ALJ, only the ALJ's reliance on the SDM's assessment.

The court therefore rejects Claimant's argument that the ALJ committed reversible error by

giving substantial weight to a SDM.  Further, as previously noted, Claimant's counsel never

indicated to the ALJ that a consultative examination, or similar additional development of the

record, was necessary. *Branum*, 385 F.3d at 1271 ("the ALJ may ordinarily require counsel to

identify the issue or issues requiring further development." (internal quotations omitted)).

    **b.  *The ALJ's Alleged Failure to Discuss Evidence Showing Changes to Claimant's***
        ***Spine***

In the ALJ's RFC analysis, the ALJ stated that "examinations reveal only mild findings,

with diagnostic imaging documenting minimal degenerative changes of the back (Exhibits 1F,

3F, 4F, 9F, 10F, 16F, 19F)."  (AR at 29.)  The ALJ noted that "[an] MRI scan of the lumbar

spine taken in May 2011 documents minimal degenerative changes (Exhibit 4F, page 2)" and

that "following a motor vehicle accident in October 2011, x-rays of the cervical and lumbar spine

were normal (Exhibit 10F, page 54 and Exhibit 11F)."  (*Id.* at 30.)

Claimant argues that the ALJ failed to discuss the "x-rays of the cervical spine show[ing]

degenerative disc narrowing at the C4 level" and "EMG/NCV studies show[ing] mild acute and

chronic denervating changed at the bilateral L5-S1 root."  (Opening Br. at 13.)  Claimant does

not, however, explain why the ALJ's failure to discuss this evidence is reversible error.  The ALJ

must consider all the evidence and cite facts to support each conclusion in her RFC analysis, but

is not required to dissect all of the evidence.  SSR 96-8p, 1996 WL 374184 at *7; *Clifton*, 79

F.3d at 1009–10.  Claimant does not argue that the ALJ failed to consider this evidence, and the

ALJ's citation to Exhibits 3F and 4F indicates that the ALJ at least considered the evidence in those exhibits.  The court therefore rejects Claimant's argument that the ALJ did not discuss certain evidence showing changes to Claimant's spine.

### c. The ALJ's Alleged Failure to Weigh and Evaluate the "Informal Assessment" of Claimant's Limitations by Claimant's Chiropractor, Dr. Ronald S. Hoyle

The ALJ is required to consider every medical opinion the ALJ receives, whether those opinions are from "acceptable medical sources" or from "other sources."  20 C.F.R. § 416.927(c); SSR 06-03P, 2006 WL 2329939 at *3.  Chiropractors are not acceptable medical sources.  20 C.F.R. § 404.15139(a); SSR 06-03P, 2006 WL 2329939 at *2.  Medical opinions are opinions that "reflect judgments about the nature and severity of [a claimant's] impairment(s)."  20 C.F.R. § 404.1527(a)(2); SSR 96-2P, 1996 WL 374188 at *2.  Any medical findings that "impact the ALJ's determination of [a claimant's] RFC" are medical opinions.  *Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1170 (D. Colo. 2012) 1170.

When evaluating and weighing non-controlling medical opinions, whether from acceptable sources or not, the ALJ considers six factors:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention that tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927; SSR 06-03P, 2006 WL 2329939 at *3.  Then, in the ALJ's

written decision, the ALJ must clearly state how much weight the ALJ ultimately assigned the

opinion and why.  *See Watkins*, 350 F.3d at 1300–01.  When explaining the weight given to

"other source" opinions that may have an effect on the outcome of the disability decision, the

ALJ's discussion must, at a minimum, "allow a claimant or subsequent reviewer to follow the

adjudicator's reasoning."  SSR 06-03P, 2006 WL 2329939 at *6.  *See also Mounts v. Astrue*, 479

F. App'x 860, 866 (10th Cir. 2012).  The ALJ must consider the six factors, but need not discuss

each of them.  *Id. (*quoting 20 C.F.R. § 404.1527(d)(2)); *Oldham v. Astrue*, 509 F.3d 1254, 1258

(10th Cir. 2007).

Here, on February 26, 2010, Claimant's chiropractor, Dr. Hoyle, wrote a letter for

Claimant stating that he had seen her that day for chiropractic care and recommended "that she

be off work for the remainder of the weekend due to hip and low back pain."  (AR at 530.)  The

letter stated nothing more.  (*Id*.)  Then, on September 27, 2011, Dr. Hoyle wrote another letter

for Claimant, this time stating that Claimant "responded well to conservative chiropractic care"

but that Claimant's condition was "very easily exacerbated with physical activity, lifting, being

on [her] feet for long periods of time, etc." (*Id.* at 536.)  Both letters are part of Exhibit 9F.  (*Id.*

at 530, 536.)

In the ALJ's RFC analysis, the ALJ cited Exhibit 9F on three occasions.  First, the ALJ

cited Exhibit 9F to support her statement that, "While the claimant has alleged disabling pain,

which prevents her from full-time work, examinations reveal only mild findings, with diagnostic

imaging documenting minimal degenerative changes of the back (Exhibits 1F, 3F, 4F, 9F, 10F,

16F, 19F)."  (*Id.* at 29.)  Second, the ALJ cited the exhibit after stating that "[t]he medical

evidence of record reveals the claimant has a history of subjective complaints of hip and back

pain for which she has received mostly chiropractic care (Exhibits 1F-6F, 9F-16F, 19F)." (*Id.* at

30.)  Third, the ALJ cited Exhibit 9F after pointing out that Claimant's leg-length discrepancy

was successfully treated with a fitted orthotic.  (*Id.*)  The ALJ did not mention Dr. Hoyle by

name or the letters he wrote for Claimant.  Nor did the ALJ evaluate or weigh the statements

made in those letters.

Claimant argues that Dr. Hoyle's letters "reflect an informal assessment of her

limitations" and that the ALJ erred by not weighing them.  (Opening Br. at 13.)  Claimant

contends that Dr. Hoyle's letters "indicate[] an inability to perform light work pursuant to SSR

83-10" because the primary difference between sedentary work and light work is the degree of

walking, light work requires "a good deal of walking or standing" and the "full range" of light

work "requires the ability to stand and walk for approximately six hours of an eight-hour

workday."  (*Id.* at 13–14.)

The court finds that Dr. Hoyle's February 2010 letter is not a medical opinion.  Dr.

Hoyle's two-sentence letter recommending Claimant not work one weekend because of pain

does not contain the kind of judgments about the nature and severity of Claimant's impairments

contemplated by the Commissioner's regulations.  Accordingly, the ALJ was not required to

evaluate and weigh the statements in that letter.

Although the court agrees that the September 2011 letter, when construed in a light most

beneficial to Claimant, contains medical opinions contemplated by the Commissioner's

regulations, the court finds the ALJ's failure to explicitly evaluate and weigh those opinions is

harmless error.  The statements that Claimant "responded well to conservative chiropractic care"

and that Claimant's condition was "very easily exacerbated with physical activity, lifting, being on feet for long periods of time, etc." are marginally medical opinions because, even though the purpose of the letter is unknown and the statements lack significant details, they nevertheless reflect Dr. Hoyle's judgments about the nature and severity of Claimant's impairments.  They show Dr. Hoyle's judgment that "conservative" chiropractic care treated her condition and his judgment that her condition is severe enough to be "easily exacerbated with physical activity" like lifting and standing for "long periods of time."  The remaining statements in the September 2011 letter are mere descriptions of Claimant's symptoms and treatments.  (*See* AR at 536.) They contain no judgments and are therefore not medical opinions.

However, given the ALJ's references to Exhibit 9F, her specific mention of the custom orthotic referenced in the September 2011 letter, and her references to the treatment of Claimant's condition using chiropractic care, it is clear that the ALJ considered Exhibit 9F and its contents, including the September 2011 letter.  Further, the judgments contained in the letter either support the ALJ's RFC assessment or are too vague to contradict it.  Dr. Hoyle's judgment that Claimant "responded well to conservative chiropractic care" supports the ALJ's RFC assessment.  Dr. Hoyle's judgment that Claimant's condition is "very easily exacerbated with physical activity, lifting, being on feet for long periods of time, etc." does not specify any limits on that physical activity or elaborate on the meaning of "etc."  Without such details, there is no indication that the letter, even if fully credited, would contradict or undermine the ALJ's RFC assessment.  The ALJ's failure to evaluate and weigh Dr. Hoyle's "informal assessment" is therefore harmless error.

### 4.   The ALJ's Credibility Assessment

Credibility determinations are reserved to the ALJ, and the Court will not upset those determinations when they are supported by substantial evidence. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  The ALJ must cite specific reasons for doubting the claimant's credibility, especially when subjective pain testimony is crucial. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  When evaluating the credibility of a claimant's pain testimony, the ALJ must consider a multitude of factors, including the extensiveness of the claimant's attempts to obtain relief, the frequency of the claimant's medical contacts, the nature of the claimant's daily activities, subjective measures of credibility within the ALJ's judgment, and the consistency or compatibility of the claimant's testimony with objective medical evidence. *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004).  In addition to these factors, the Commissioner's regulations require the ALJ to consider the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type dosage, effectiveness, and side-effects of medications taken to relieve pain; treatment, other than medication; measures the claimant has used to relieve pain; and other factors.  20 C.F.R. § 404.1529.  The ALJ need not make a "formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation omitted).  Ultimately, "common sense, not technical perfection," is the Court's guide. *Id.*

Here, the ALJ recounted Claimant's testimony about her impairments and limitations and found that testimony "not entirely credible."  (AR at 29.)  The ALJ explained that Claimant's daily activities are "not limited to the extent one would expect, given her complaints of disabling

symptoms," that the evidence in her medical record "does not support the claimant's allegations

of disabling pain and limitations," that Mr. Routledge's oral testimony was not persuasive

because of its inconsistency with the medical evidence, and that neither the "record as a whole"

nor "more recent medical evidence" supports Claimant's subjective allegations.  (*Id.* at 29–30.)

As part of the ALJ's explanation, the ALJ compared Claimant's subjective allegations to the

evidence in the medical record and to her daily activities.  (*See id*.)  The ALJ noted that Claimant

is able to "perform significant activities of daily living such as laundry, shopping, and driving,"

that examinations reveal only mild findings and diagnostics reveal only minimal degeneration in

the back, that Claimant's leg-length discrepancy was successfully treated with an orthotic, that

Claimant takes no prescribed pain medication but attempts to relieve her pain in a variety of

ways, including taking baths, getting massages, smoking medical marijuana, chiropractic

treatments, and that recent medical records report Claimant "feeling a lot better with improved

pain management after beginning treatment in 2012."  (*Id.*)

Claimant argues that the ALJ did not consider Claimant's daily activities; the location,

duration, frequency, and intensity of symptoms; precipitating and aggravating factors; the type

dosage, effectiveness and side-effects of medications; treatment other than medication; and other

measures used to relieve symptoms.  (Opening Br. at 16.)  But of all those factors, Claimant

focuses most extensively on the ALJ's alleged failure to consider Claimant's many attempts to

treat her pain, including medication, exercise, chiropractic adjustments, hot baths, massages, and

medical marijuana.  (*Id.* at 16–18.)  Claimant also contests the ALJ's alleged use of Claimant's

part-time work as a reason to discount Claimant's testimony, arguing that Claimant "should not

be penalized for her strong motivation to work."  (*Id.* at 18.)  Claimant further argues that the

ALJ should have given Mr. Routledge's testimony greater weight because of his "intimate

knowledge" and observations of Claimant.  (*Id.* at 18–19.)

Though the ALJ did not offer a formalistic factor-by-factor recitation of the evidence, the

ALJ did demonstrate that she considered the required factors when assessing Claimant's

credibility.  The ALJ clearly demonstrated that she considered the location, duration, frequency,

and intensity of Claimant's pain or other symptoms by discussing, among other examples,

Claimant's fibromyalgia in wrists and hands, chronic pain in her low back and hips, and hip pops

that occur when she works.  (*See* AR at 28.)  The ALJ considered the extensiveness of

Claimant's attempts to obtain relief, including non-medicinal treatments and the other measures,

noting Claimant's chiropractic adjustments, custom orthotic, hot baths, massages, and marijuana

use.  (*See id.* at 28, 30.)  The ALJ considered Claimant's daily activities, listing specifically

laundry, shopping, driving, yoga, walking her dog, bike rides around the neighborhood, and

doing some household chores.  (*See id.* at 28.)  The ALJ repeatedly examined the consistency or

compatibility of Claimant's testimony with objective medical evidence, citing numerous

examples of what the ALJ considered to be inconsistences between the evidence and Claimant's

alleged symptoms.  (*See id.* at 29–30.)  The court therefore rejects Claimant's argument that the

ALJ did not consider the required factors.

Early in her written decision, the ALJ stated that Claimant's part-time work at Papa Johns

delivering pizzas "certainly appears inconsistent with the alleged severity of her impairments."

(*Id.* at 25.)  The ALJ is not only permitted, but also required to consider the nature of the

claimant's daily activities and subjective measures of credibility within the ALJ's judgment.

*Branum*, 385 F.3d at 1273–74.  It is not error for the ALJ to discount Claimant's credibility

because her allegations of disabling impairments are inconsistent with her part-time work.  *See,*

*e.g.*, *Kepler*, 68 F.3d at 389 n.2.  Accordingly, Claimant's allegation that the ALJ penalized

Claimant for her "strong motivation to work" is without merit.

The ALJ properly considered Mr. Routledge's testimony and discounted it for

permissible reasons.  The ALJ is permitted to discount an opinion, especially a lay one, when

that opinion is "inconsistent with the medical evidence from treating and examining providers."

*See* SSR 06-03P, 2006 WL 2329939 at *2–3 (stating that, among other considerations, the ALJ

must consider the consistency of the witness's testimony with other evidence).  Claimant does

not contest the reasons the ALJ discounted the opinion, and the court may not "substitute its

judgment" for that of the Commissioner."  *Jozefowicz*, 811 F.2d at 1357.

The court therefore affirms the ALJ's credibility assessment of Claimant and Mr.

Routledge.

### 5.  The Vocational Expert's Testimony at Step-Five

Claimant argues that the vocational expert's testimony cannot serve as substantial

evidence at step five because the ALJ's hypothetical to the vocational expert was incomplete due

the ALJ's errors at steps two, three, and four.  (Opening Br. at 19.)  However, the court has

concluded that the ALJ's decision at steps two, three and four is supported by substantial

evidence.  Thus, Claimant's claim that the ALJ posed an incomplete or otherwise defective

hypothetical to the VE is moot.

### CONCLUSION

Having considered and rejected each of Claimant's arguments, it is therefore

**ORDERED** that the Commissioner's decision through the Administrative Law Judge is

**AFFIRMED**.  It is further

**ORDERED** that the Commissioner, the Defendant, is awarded costs pursuant to Fed. R.

Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 11th day of January, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge